KEKER, VAN NEST & PETERS LLP
R. ADAM LAURIDSEN - # 243780
alauridsen@keker.com
IAN KANIG - # 295623
ikanig@keker.com
MAILE YEATS-ROWE - # 321513
myeats-rowe@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff
VICTORIA PETERSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VICTORIA PETERSON, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WILLIAM MARTINEZ, in his individual capacity<br><br>　　　　　Defendant. | Case No. 3:19-cv-1447<br><br>**FURTHER JOINT STATUS REPORT REGARDING THE PARTIES' SETTLEMENT**<br><br>Judge:　　Hon. William H. Orrick<br><br>Date Filed: March 20, 2019<br><br>Trial Date: August 23, 2021 |

**FURTHER JOINT STATUS REPORT REGARDING THE PARTIES' SETTLEMENT**

Plaintiff Victoria Peterson ("Peterson") and Defendant William Martinez ("Martinez") (together, "Parties") hereby jointly provide the following further status report on their settlement. The parties recite the extended procedural history from their last status report for clarity and ease of reference. *See* Dkt. No. 178.

**Martinez's Bankruptcy Petition and Peterson's Adversary Action**

By way of background, this matter was automatically stayed on March 9, 2021 when Martinez filed a petition for bankruptcy in the Eastern District of California Bankruptcy Court. *See* Dkt. No. 167 (Martinez's notice of bankruptcy petition and automatic stay of this action).

On June 28, 2021, Peterson moved to lift the automatic bankruptcy stay on the grounds that the Bankruptcy Court lacks jurisdiction to try or otherwise liquidate Peterson's claims against Martinez that she asserts in the instant civil action, and that cause existed to lift the bankruptcy stay pending judgment in this action. *See* 11 U.S.C. § 157(b)(5); 11 U.S.C. § 362(d)(1). That same day, Peterson filed an adversary complaint for non-dischargeability, asserting that Martinez cannot discharge any forthcoming liquidated judgment against him because debts for willful and malicious injuries are non-dischargeable in a Chapter 13 bankruptcy. *See* 11 U.S.C. § 1328(a)(4).

On August 10, 2021, the Bankruptcy Court granted Peterson's motion to lift the stay on the grounds that "the nature of the district court litigation warrants relief from stay for cause." The Bankruptcy Court also explained that "[a]ny judgment obtained [in Peterson's civil action] shall be brought back to this court for the proper treatment of any claims under the Bankruptcy Code." A formal order granting the motion to lift the stay followed on August 13, 2021.

On August 19, 2021, the Bankruptcy Court issued a *sua sponte* order to show cause why Peterson's adversary action for non-dischargeability should not be transferred to the Bankruptcy Court for the Northern District of California in the interests of justice and for the convenience of the parties. On August 31, 2021, Peterson filed a statement of non-opposition to the transfer. On September 1, 2021, Peterson's adversary action was transferred to the Northern District.

**The Parties' Settlement Conference and Settlement Agreement**

In the meantime, on August 27, 2021, Peterson filed a notice with this Court that the

bankruptcy stay had been lifted and requested a further case management conference to set a date and time for the parties to conduct a settlement conference with a settlement magistrate.  Dkt. No. 171.  In response, on August 30, 2021, the Court referred this matter to Magistrate Judge Thomas Hixson to set a date and time for the parties to conduct a settlement conference.  Dkt. No. 172.

On November 19, 2021, the parties conducted a settlement conference with Judge Hixson, and the matter settled.  Dkt. Nos. 175 & 176.  The parties subsequently prepared a full written agreement, attached hereto as **Attachment A**.

Under the terms of the parties' settlement agreement, Peterson compromised her claims against Martinez in exchange for a monetary sum, which was structured to involve a larger, upfront payment and then 48 months of monthly payments to follow.  Attachment A ¶¶ 2–3.  Because Martinez had declared bankruptcy, and because that bankruptcy proceeding had already resulted in a Chapter 13 plan confirmation, the parties further agreed that the settlement award would not be dischargeable in bankruptcy.  *Id.* ¶ 4.  To effectuate that agreement, the parties would file a stipulated judgment of non-dischargeability in Peterson's adversary action.  *Id.*  The parties further agreed that if the bankruptcy courts did not approve or modified or rejected the terms of the settlement agreement, it would be voidable at Peterson's sole discretion.  *Id.*

<u>**Subsequent Bankruptcy Proceedings Regarding the Settlement Agreement**</u>

On January 12, 2022, the parties filed the stipulated judgment of non-dischargeability in Peterson's adversary action in the Northern District Bankruptcy Court.  On January 24, 2022, Judge Dennis Montali entered the stipulation, adjudging the settlement as non-dischargeable.

On February 1, 2022, the parties then filed a notice of settlement and judgment of non-dischargeability with the Eastern District Bankruptcy Court hearing Martinez's bankruptcy.  That same day, Peterson also filed an amended claim with that bankruptcy court reflecting the award.  Peterson believed that the bankruptcy court would provide further instructions on how to proceed.

On March 8, 2022, without any explanation, Peterson received a check from the Chapter 13 bankruptcy trustee in Martinez's bankruptcy action.  The check was for an amount that did not correspond to any amount that the parties had agreed upon in their settlement (neither the upfront payment nor the monthly payments).  In response, on March 15, 2022, Peterson's counsel called

Martinez's counsel representing him in his bankruptcy action. Counsel agreed that Peterson's counsel should call the trustee's office to determine what the amount of the check represented and whether it could be modified to align with the amount agreed upon in the parties' settlement.

After several attempts, in April 2022, Peterson's counsel spoke with the bankruptcy trustee's office, who explained that the settlement check represented the pro rata amount of the settlement that Peterson had received that month under the terms of the bankruptcy plan. The trustee's office explained that further checks would be forthcoming. But because this amount constituted a modification of the structure of the settlement agreement, including the complete absence of an upfront payment, Peterson's counsel inquired whether the trustee's office would agree to join a motion from Peterson and Martinez to modify Martinez's Chapter 13 bankruptcy plan in a manner that would accord with the terms of the settlement agreement. The trustee's office would not commit to join such a motion without first having its law and motion department review it. Accordingly, Peterson's counsel agreed to draft the motion and send over for review.

**Negotiations Between the Parties Regarding Further Bankruptcy Motion Practice**

After the parties filed their last joint status report regarding their settlement, Peterson's counsel contacted Martinez's bankruptcy counsel to determine whether there was another mechanism in bankruptcy court by which Martinez could make compliant settlement payments. Martinez's bankruptcy counsel suggested that the parties file a motion for settlement approval under Federal Rule of Bankruptcy Procedure 9019, instead of a motion to modify the bankruptcy plan. Peterson's counsel drafted a settlement-approval motion under Rule 9019 and presented it to Martinez's counsel on June 8, 2022, for filing approval.

At that point, Martinez's bankruptcy counsel refused to engage in the process any further, and told Peterson's counsel to present the motion to Martinez directly for his approval. After trying to determine why Martinez's counsel would not review the motion that the parties had just agreed to prepare and file, Peterson's counsel received permission to contact Martinez directly. After explaining the procedural posture of the case to Martinez, Martinez ultimately signed off on the joint settlement-approval motion, and the parties agreed to determine a hearing date.

///

**Subsequent Communications with the Bankruptcy Trustee's Office**

On June 28, 2022, while discussions were ongoing between the parties about the joint settlement-approval motion, the bankruptcy trustee's office emailed Peterson's counsel to inquire about the status of the uncashed checks that it had sent to Peterson's counsel. On June 30, 2022, Peterson's counsel responded and explained the procedural posture of the matter, and that counsel had been in contact with the trustee's office in April 2022 about potentially filing a joint motion to modify Martinez's bankruptcy plan to accommodate payments that accorded with the parties' settlement agreement. Peterson's counsel also explained that the parties had decided to file a joint settlement-approval motion under Rule 9019 instead, and asked whether the trustee's office would like to set up a call to discuss next steps. The trustee's office did not respond to the email.

Instead, later that same day, the trustee's office sent a letter to Martinez's bankruptcy counsel, without copy to Peterson's counsel, which is attached hereto as **Attachment B**. The letter explained that the trustee's office had "completed a secondary review" of Martinez's case and discovered that his confirmed bankruptcy plan "is no longer feasible" because "the plan will take approximately 81 months to complete." The trustee noted that "the overextension is caused by the claim filed by creditor Victoria Peterson." The trustee explained to Martinez's counsel that "[i]f no action is taken by 8/01/2022 to resolve the above issue(s) in the case the Trustee will set a 1307 dismissal of [Martinez's] case." Martinez's bankruptcy counsel did not forward the letter to Peterson's counsel. It was only when Martinez himself sent Peterson's counsel a copy of the letter on August 8, 2022, that Peterson's counsel became aware of this new issue. Martinez indicated it was his intent to allow the bankruptcy action to be dismissed on the trustee's motion.

Since that time, Peterson's counsel and Martinez have agreed to allow for dismissal of his bankruptcy action, because that will remove any remaining impediment to their settlement. If the trustee's office does not file a dismissal motion in short order, Peterson's counsel will take appropriate further steps to help effectuate the dismissal in a timely manner. Once the bankruptcy action is dismissed, the parties will file a joint motion to dismiss in this action. Accordingly, the parties look forward to the resolution of this matter in accordance with their settlement in short order.

| | | |
|---|---|---|
| Dated: September 2, 2022 | | KEKER, VAN NEST & PETERS LLP |

By:   <u>*/s/ Ian Kanig*</u>
       R. ADAM LAURIDSEN
       IAN KANIG
       MAILE YEATS-ROWE

Attorneys for Plaintiff Victoria Peterson

Dated: September 2, 2022      By: <u>                         </u>
                                           WILLIAM MARTINEZ (PRO SE)

**ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained for the other signatory in this e-filed document.

Dated: September 2, 2022                                          KEKER, VAN NEST & PETERS LLP

By: */s/ Ian Kanig*
R. ADAM LAURIDSEN
IAN KANIG
MAILE YEATS-ROWE

Attorneys for Plaintiff
VICTORIA PETERSON